IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT BAKER<br>5003 Portage Drive<br>Vermilion, Ohio 44089 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| CITY OF RICHMOND HEIGHTS<br>26789 Highland Road<br>Richmond Heights, Ohio 44143 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | )<br>) | |

Plaintiff, Robert Baker, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES AND VENUE**

1. Baker is a resident of the city of Vermilion, county of Erie, state of Ohio.

2. City of Richmond Heights (hereinafter referred to as the "City") is a municipality located at 26789 Highland Road, Richmond, Heights, Ohio 44143.

3. The City was at all times hereinafter mentioned an employer within the meaning of R.C. § 4123.90 *et seq.*

4. The City was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

5. The City was at all times hereinafter mentioned an employer within the meaning of 29 U.S.C. § 2601 *et seq.*

6. All of the material events alleged in this Complaint occurred in Cuyahoga County.

7. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and (4).

Electronically Filed ~~03/25/2021 16:47~~ / CV 21 045533 / Confirmation Nbr. 2212361 / CLJSZ
The Employee's Attorney.™

EXHIBIT A



8. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Baker is a former employee of the City

11. Baker began working for the City on or around August 12, 2019.

12. The City employed Baker as a Residential Building Official.

13. Baker had a strong history of performance with the City.

14. Baker consistently received pay raises.

15. Baker did not have any history of meaningful discipline.

16. On or around January 13, 2020, Baker sustained a severe injury to his knee while working for the City (hereinafter referred to as "Workplace Knee Injury").

17. Immediately after the Workplace Knee Injury, Baker filled out an incident report concerning the Workplace Knee Injury.

18. As Baker drafted an incident report on or around January 13, 2020, Baker made a complaint regarding a workplace injury.

19. Due to the Workplace Knee Injury, Baker sought medical treatment.

20. During the Workplace Knee Injury, Baker filled out paperwork to receive Workers' Compensation benefits.

21. Baker applied for, and/or sought Workers' Compensation benefits as a result of the Workplace Knee Injury.

22. Baker's physician advised that Baker would need surgery as a result of the Workplace Knee Injury.


23. Baker's physician ordered Baker to refrain from bending, twisting, squatting, kneeling, and remaining seated for longer than 30 minutes ("Baker Restrictions").

24. Baker's Workplace Knee Injury constituted a physical impairment.

25. Baker's Workplace Knee Injury substantially impaired one or more of his major life activities, including working.

26. Baker's Workplace Knee Injury substantially impaired one or more of his major life activities, including walking.

27. As a result of suffering from the Workplace Knee Injury, Baker is and was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

28. Alternatively, the City perceived Baker as being disabled.

29. Alternatively, the City perceived that Baker's Workplace Knee Injury constituted a physical impairment.

30. Despite any real or perceived disability, Baker was capable of performing his essential job functions with or without reasonable accommodation(s).

31. After the Workplace Knee Injury, Baker returned to work with the Baker Restrictions on or around January 16, 2020.

32. Due to the COVID-19 pandemic, Baker's knee surgery from the Workplace Knee Injury was postponed until July 2, 2020.

33. Baker worked for the City for approximately 5 months after the Workplace Knee Injury.

34. On or around June 29, 2020, Baker took leave for surgery from the Workplace Knee Injury.

35. On or around July 2, 2020, Baker underwent knee surgery from the Workplace Knee Injury.

36. On or around August 12, 2020, Baker qualified for Family Medical Leave Act ("FMLA") leave in connection with his disability.



37. The City is a covered employer under the FMLA.

38. As of August 12, 2020, Baker worked for the City for at least 12 months.

39. As of August 12, 2020, Baker had at least 1,250 hours of service for the City during the previous months.

40. On or around August 12, 2020, Baker was on leave after receiving surgery due to the Workplace Knee Injury.

41. On August 12, 2020, the City was aware that Baker suffered from the Workplace Knee Injury.

42. On August 12, 2020, the City was aware that Baker had to take time off work to treat his Workplace Knee Injury.

43. The City had sufficient knowledge that Baker suffered from a serious medical condition.

44. The City failed to advise Baker of his rights to utilize FMLA leave.

45. The City did not provide Baker a Notice of Eligibility of his rights to utilize FMLA leave.

46. In failing to notify Baker of his rights pursuant to the FMLA, the City interfered with Baker's rights under the FMLA.

47. Baker's leave after receiving surgery due to the Workplace Knee Injury qualified for protection under the FMLA.

48. On or around September 29, 2020, Baker contacted James Urankar to communicate his desire to return to work.

49. Urankar was Baker's immediate supervisor.

50. The City employed Urankar as a Building Commissioner.

51. During all material events asserted herein, Urankar has and/or had authority to hire, fire, and/or discipline employees.

52. Baker informed Urankar that he was cleared to return to work as of October 5, 2020.



53. Urankar instructed Baker to contact human resources regarding his return to work.
54. On or around September 29, 2020, Baker contacted Kathy Gamber to communicate his desire to return to work.
55. Gamber was Baker's human resources manager.
56. During all material events asserted herein, Gamber has and/or had authority to hire, fire, and/or discipline employees.
57. Baker informed Gamber that he was cleared to return to work as of October 5, 2020.
58. Gamber instructed Baker to submit a release from his physician in order to return to work.
59. On or around September 30, 2020, Baker's physician faxed a release to the City.
60. Subsequent to his physician faxing the release, Baker attempted to contact Gamber multiple times regarding his return to work.
61. Despite Baker's follow-up attempts, Gamber failed to return Baker's calls.
62. On November 3, 2020, Gamber sent Baker a letter stating that he never returned to work and that Baker had resigned his employment effective November 3, 2020 ("November 3 Letter").
63. The allegations in the November 3 Letter were untrue.
64. After submitting the required release, Gamber failed to respond to Baker's follow-up communications to allow him to return to work.
65. Baker did not resign his position.
66. On November 10, 2020, Baker sent Gamber a letter in response to the November 3 Letter ("November 10 Letter").
67. The November 10 Letter responds to the untrue allegations made in the November 3 Letter.
68. The November 10 Letter made clear that Gamber required a release before Baker was cleared to return to work.



69. The November 10 Letter made clear that Baker submitted to required release to return to work.

70. The November 10 Letter made clear that Baker did not resign his position.

71. The November 10 Letter made clear that Gamber never called Baker back to work.

72. The November 10 Letter made clear that Baker believed that the City violated workers' compensation laws as the City had improperly terminated Baker's employment.

73. The City terminated Baker's employment as of November 3, 2020.

74. The City terminated Baker's employment in retaliation for filing a Workers' Compensation claim.

75. The City terminated Baker's employment due to his disability.

76. Alternatively, the City terminated Baker's employment due to his perceived disability.

77. The City terminated Baker's employment so that it would not have to provide him with FMLA leave.

78. Upon information and belief, the City has a progressive disciplinary policy ("Progressive Discipline Policy").

79. The City has used the Progressive Discipline Policy when disciplining employees who have not filed a Workers' Compensation claim.

80. The City has used the Progressive Discipline Policy when disciplining non-disabled employees.

81. Alternatively, the City has used the Progressive Discipline Policy when disciplining employees it did not perceive to be disabled.

82. Under the Progressive Discipline Policy, Baker had not received any meaningful discipline.

83. Under the Progressive Discipline Policy, Baker had not received any verbal warnings.

84. Under the Progressive Discipline Policy, Baker had not received any written warnings.



85. Under the Progressive Discipline Policy, Baker had not been suspended.

86. The City skipped steps under the Progressive Discipline Policy when it terminated Baker's employment.

87. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

88. Skipping steps under the Progressive Discipline Policy is an adverse action.

89. The City intentionally skipped steps under the Progressive Discipline Policy when it terminated Baker's employment.

90. The City willfully made the decision to skip steps under the Progressive Discipline Policy when it terminated Baker's employment.

91. Terminating Baker's employment was an adverse employment action.

92. Terminating Baker's employment was an adverse action.

93. The City intentionally terminated Baker's employment.

94. The City willfully made the decision to terminate Baker's employment.

95. The City terminated Baker's employment in violation of the Progressive Discipline Policy because he filed a Workers' Compensation claim.

96. The City terminated Baker's employment in violation of the Progressive Discipline Policy because he was disabled.

97. The City terminated Baker's employment in violation of the Progressive Discipline Policy because it perceived him to be disabled.

98. The City terminated Baker's employment in violation of the Progressive Discipline Policy so that it would not have to provide him FMLA leave to which he was entitled.



## COUNT I: WORKER'S COMPENSATION RETALIATION

99. Baker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. On or around January 13, 2020, Baker sustained a severe injury to his knee while working for City of Richmond Heights.

101. On or around January 13, 2020, Baker filed a claim for Workers' Compensation benefits as a result of suffering an injury while performing work for City of Richmond Heights.

102. Baker took work off on or around July 2, 2020 for surgery due to his workplace injury.

103. Baker communicated with the City on September 29, 2020 to attempt to return to work as of October 5, 2020.

104. On or about November 3, 2020, the City terminated Baker's employment.

105. The City terminated Baker in retaliation for Baker filing a claim for Workers' Compensation benefits.

106. Baker was discharged without just cause for filing a claim for Workers' Compensation benefits, Baker is therefore entitled to recover damages from the City for its wrongful discharge of him in retaliation for filing a claim for Workers' Compensation benefits under R.C. § 4123.90.

107. As a direct and proximate result of the City's conduct, Baker has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

108. Baker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.



109. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

110. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

111. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

112. On or around January 13, 2020, Baker filed a claim for Workers' Compensation benefits as a result of suffering an injury while performing work for the City.

113. Baker took work off on or around July 2, 2020 for surgery due to his workplace injury. Baker communicated with the City on September 29, 2020 to attempt to return to work as of October 5, 2020.

114. On or about November 3, 2020, the City terminated Baker's employment.

115. The City terminated Baker's employment in retaliation for Baker filing a claim for Workers' Compensation benefits.

116. The City's termination of Baker's employment jeopardizes these public policies.

117. The City's termination of Baker's employment was motivated by conduct related to these public policies.

118. The City had no overriding business justification for terminating Baker.



119. As a direct and proximate result of the City's conduct, Baker has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III: DISABILITY DISCRIMINATION

120. Baker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. On or around January 13, 2020, Baker suffered from a severe injury to his knee as a result of the Workplace Knee Injury.

122. Baker's Workplace Knee Injury constituted a physical impairment.

123. Baker's Workplace Knee Injury substantially impaired one or more of his major life activities including working.

124. Baker's Workplace Knee Injury substantially impaired one or more of his major life activities including walking.

125. Baker is disabled.

126. In the alternative, the City perceived Baker as being disabled.

127. The City treated Baker differently than other similarly-situated employees based on his disabling condition.

128. The City treated Baker differently than other similarly-situated employees based on his perceived disabling condition.

129. On or about November 3, 2020, the City terminated Baker's employment without just cause.

130. The City terminated Baker's employment based his disability.

131. Alternatively, the City terminated Baker's employment based his perceived disability.

132. The City violated R.C. § 4112.01 *et seq.* when it discharged Baker based on his disability.



133. Alternatively, the City violated R.C. § 4112.01 *et seq.* when it discharged Baker based on his perceived disability.

134. The City violated R.C. § 4112.01 *et seq.* by discriminating against Baker based on his disabling condition.

135. Alternatively, the City violated R.C. § 4112.01 *et seq.* by discriminating against Baker based on his perceived disabling condition.

136. Baker suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

137. As a direct and proximate result of the City's conduct, Baker suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT IV: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

138. Baker restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

140. The City is a covered employer under the FMLA.

141. During his employment, Baker qualified for FMLA leave.

142. As of August 2020, Baker worked for the City for at least 12 months.

143. As of August 2020, Baker had at least 1,250 hours of service for the City during the previous 12 months.

144. In or around August 2020, Baker was on leave after receiving surgery due to the Workplace Knee Injury.



145. Baker's leave after receiving surgery due to the Workplace Knee Injury qualified for protection under the FMLA.

146. The City failed to properly advise Baker of his rights under the FMLA.

147. The City unlawfully interfered with Baker's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

148. On or around September 25, 2020, Baker's physician released him to return to work as of October 5, 2020.

149. On or around September 29, 2020, Baker communicated his desire to return to work as of October 5, 2020 to Gamber.

150. The City prevented Baker from returning to work as of October 5, 2020.

151. On November 3, 2020, the City terminated Baker's employment.

152. The City violated the FMLA when it terminated Baker's employment to preclude him from being able to utilize FMLA leave.

153. As a direct and proximate result of the City's conduct, Baker is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Baker demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Baker to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Baker for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;



(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Baker claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

Daniel S. Dubow (0095530)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: daniel.dubow@spitzlawfirm.com
taurean.shattuck@spitzlawfirm.com

*Attorneys For Plaintiff*



## JURY DEMAND

Plaintiff Robert Baker demands a trial by jury by the maximum number of jurors permitted.

*[signature]*

Daniel S. Dubow (0095530)
Taurean J. Shattuck (0097364)

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21945533 | D1 CM | 44013044 |

Rule 4 (B) Ohio

Rules of Civil Procedure

ROBERT BAKER **PLAINTIFF**
VS
CITY OF RICHMOND HEIGHTS **DEFENDANT**

## SUMMONS

CITY OF RICHMOND HEIGHTS
26789 HIGHLAND ROAD
RICHMOND HEIGHTS OH 44143

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on: 

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

TAUREAN J. SHATTUCK
25200 CHAGRIN BOULEVARD

SUITE 200
CLEVELAND, OH 44122-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

WILLIAM F. B. VODREY
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD
Clerk of the Court of Common Pleas



By_____
Deputy

| DATE SENT |
|---|
| Mar 26, 2021 |



COMPLAINT FILED 03/25/2021

CMSN130

EXHIBIT B

**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 04/05/2021

CERTIFIED MAIL SOLUTIONS INC.:

The following is the delivery information for Certified Mail™/RRE item number 9314 8001 1300 3544 4690 38. Our records indicate that this item was delivered on 03/29/2021 at 12:15 p.m. in CLEVELAND, OH 44143. The scanned image of the recipient information is provided below.

Signature of Recipient :

Signature X Rhonda Gibson
Printed Name Rhonda Gibson

Address of Recipient :

Delivery Address 26789 Highland Rd

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: CV21945533 R44013044 CITY OF RICHMOND HEIGHTS 20210407 05:09
Sent To: 26789 HIGHLAND ROAD RICHMOND HEIGHTS, OH 44143

EXHIBIT C

Print

## CASE INFORMATION

## CV-21-945533 ROBERT BAKER vs. CITY OF RICHMOND HEIGHTS

### Docket Information

| Filing Date | Docket Party | Docket Type | Docket Description | View Image |
|---|---|---|---|---|
| 04/07/2021 | N/A | SR | USPS RECEIPT NO. 44013044 DELIVERED BY USPS 03/29/2021 CITY OF RICHMOND HEIGHTS PROCESSED BY COC 04/07/2021. | |
| 03/26/2021 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 03/26/2021 | D1 | CS | WRIT FEE | |
| 03/26/2021 | D1 | SR | SUMS COMPLAINT(44013044) SENT BY CERTIFIED MAIL. TO: CITY OF RICHMOND HEIGHTS 26789 HIGHLAND ROAD RICHMOND HEIGHTS, OH 44143 | 📄 |
| 03/25/2021 | N/A | SF | JUDGE WILLIAM F. B. VODREY ASSIGNED (RANDOM) | |
| 03/25/2021 | P1 | SF | LEGAL RESEARCH | |
| 03/25/2021 | P1 | SF | LEGAL NEWS | |
| 03/25/2021 | P1 | SF | LEGAL AID | |
| 03/25/2021 | P1 | SF | COURT SPECIAL PROJECTS FUND | |
| 03/25/2021 | P1 | SF | COMPUTER FEE | |
| 03/25/2021 | P1 | SF | CLERK'S FEE | |
| 03/25/2021 | P1 | SF | DEPOSIT AMOUNT PAID DANIEL S. DUBOW | |
| 03/25/2021 | N/A | SF | CASE FILED: COMPLAINT, SERVICE REQUEST | 📄 |

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

Website Questions or Comments.
Copyright © 2021 PROWARE. All Rights Reserved. 1.1.256

EXHIBIT D